IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:16-CV-067-DCK

| | |
|---|---|
| HANNAH WIKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) ORDER |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 10) and the "Commissioner's Motion For Summary Judgment" (Document No. 12). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are now ripe for disposition. After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will direct that Plaintiff's "Motion For Summary Judgment" be <u>denied</u>; that the "Commissioner's Motion For Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. BACKGROUND

Hannah Wike ("Plaintiff"), was born on July 27, 1992 and received Title XVI benefits throughout her childhood. (Tr. 104). In or about February 2011, the Social Security Administration ("SSA") made the determination that applying adult standards Plaintiff was no longer disabled. (Tr. 10, 104, 111). The SSA stated in pertinent part that:

> We realize that her condition keeps her from doing some types of work, but it does not keep her from doing less demanding work. Based on her age, education, and past work experiences, she can do other work. It has been decided, therefore, that she is not disabled according to the Social Security Act.

(Tr. 111).

On or about April 14, 2011, Plaintiff submitted a "Request For Reconsideration – Disability Cessation" (Tr. 116). On April 27, 2012, Allen R. Shuping issued a "Disability Hearing Officer's Decision" affirming that because Plaintiff has the capacity for substantial gainful activity, she was "not disabled" in accordance with the regulations. (Tr. 147-157). On May 2, 2012, the SSA issued another cessation notice and informed Plaintiff she had a right to appeal for a hearing before an Administrative Law Judge. (Tr. 160-161).

Plaintiff filed a timely written request for a hearing on June 11, 2012. (Tr. 10, 163-164). On June 4, 2014, Plaintiff appeared and testified at a hearing before Administrative Law Judge Gregory M. Wilson ("ALJ"). (Tr. 10, 53-107). In addition, Leanna L. Hollenbeck, a vocational expert ("VE"), and Jonathan C. Perry, Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued a partially favorable decision on September 26, 2014. (Tr. 7-9, 10-29). The ALJ determined that Plaintiff *was* disabled from October 1, 1994 through April 30, 2013, but that by May 1, 2013 a medical improvement occurred related to Plaintiff's ability to work, thus ending her disability. (Tr. 10, 28).

On or about November 25, 2014, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on January 11, 2016. (Tr. 1-3, 49). The September 26, 2014 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff now, through counsel, seeks judicial review of the partially favorable administrative decision on her application for disability benefits. (Document No. 1). Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed with this Court on March 15, 2016. (Document No. 1).

This matter was originally assigned to the Honorable Graham C. Mullen, Senior District Judge. On June 1, 2016, the parties filed their "Joint Stipulation of Consent to Exercise Jurisdiction by a United States Magistrate Judge" (Document No. 7), and this matter was first reassigned to Magistrate Judge Dennis L. Howell, and then reassigned to Magistrate Judge David C. Keesler.

Plaintiff's "Motion For Summary Judgment" (Document No. 10) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Document No. 11) were filed August 23, 2016; and the "Commissioner's Motion For Summary Judgment" (Document No. 12) and "Memorandum Of Law In Support Of The Commissioner's Motion For Summary Judgment" (Document No. 13) were filed October 12, 2016. Plaintiff has declined to file a response/reply in further support of her motion, and the time to do so has lapsed.

The pending motions are now ripe for review and disposition.

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III.     DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between May 1, 2013, and the date of his decision.[1] (Tr. 10-29). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1)     whether claimant is engaged in substantial gainful activity - if yes, not disabled;

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 27-28).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since October 1, 1994, her alleged disability onset date. (Tr. 13). At the second step, the ALJ found that status post-surgery, right knee; degenerative joint disease, right hip; and dysplasia, dwarfism, were severe impairments.[2] (Tr. 13). At the third step, the ALJ determined that Plaintiff

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 15, 23).

Next, the ALJ assessed Plaintiff's RFC and found that she had the capacity to perform light work activity, with the following limitations:

> I specifically find that claimant can lift or carry 20 pounds occasionally and 10 pounds frequently and she can sit for 1 hour at a time; stand and walk for 30 minutes at a time for a total of all three of 6 hours, each, of an 8-hour workday. The claimant would also have a sit / stand option. I also find that she can occasionally climb stairs, ropes, ladders and scaffold; she can occasionally balance, kneel and crawl. The claimant can frequently stoop and crouch; and, the claimant should avoid concentrated exposure to hazards.

(Tr. 15-16, 25)(citing 20 CFR 416.967(b)).

In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." (Tr. 16). In addition, the ALJ noted that he found this RFC to be "well supported by the medical evidence in the record," and by Plaintiff's activities of daily living. (Tr. 25).

The ALJ also opined that following right knee surgery, on February 15, 2013, medical improvement occurred and Plaintiff was no longer disabled as of May 1, 2013. (Tr. 14-15, 23) (citing Tr. 497-520). The ALJ noted that:

> Medical improvement is also documented in records from Well Spring Family Practice which reveals progressive improvement to the claimant's knees subsequent to surgery. For example, on July 23, 2013, the claimant reported to have no fatigue, paresthesia or weakness (Exhibit 14F). Ms. Wike testified to medical improvement, that subsequent to surgery her problems resolved with her knees, they do not pop out anymore problems now resolved. Medical improvement occurred which enabled the claimant to ambulate effectively and sustain sitting standing and walking

6

>   because of the resolution of her pain and surgical procedures to her
>   knees.

(Tr. 23) (citing Tr. 443-496).

At the fourth step, the ALJ held that Plaintiff has no past relevant work. (Tr. 21, 27). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 27). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included cashier II, ticket seller, and rental clerk. (Tr. 28). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between May 1, 2013, and the date of his decision, September 26, 2014. (Tr. 28).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ improperly found that Plaintiff was no longer disabled after April 30, 2013 due to lack of pain; and (2) that there are internal inconsistencies in the ALJ decision that prevent meaningful review. (Document No. 11, p.4). The undersigned will discuss each of these contentions in turn.

**A.     Pain**

In her first assignment of error, Plaintiff argues that "because the record supports Plaintiff's allegations of ongoing pain due to chronic orthopedic problems, the ALJ's reasoning for removing the limitation for breaks from the work station due to pain is not sound and medical improvement should not have been found as of April 30, 2013. (Document No. 11, p.6). Plaintiff seems to contend that the ALJ failed to fully account for her ongoing right hip pain, and therefore, erred by finding medical improvement due to her knee surgeries. (Document No. 11, pp.5-6). Plaintiff also suggests that the ALJ's citation to Plaintiff's activities of daily living is flawed. (Document No. 11, pp.6-7).

Defendant notes that an individual experiences "medical improvement if her impairments decreased in severity since her last determination of disability." (Document No. 13, p.3) (citing 20 C.F.R. § 416.994(b)(1)). "If the individual's medical improvement resulted in an increase in her functional capacity such that she could perform her past relevant work or other work existing in significant numbers in the national economy, she is no longer disabled." Id. (citing 20 C.F.R. § 416.994(f)(8,9)).

Defendant then provides the following summary of the ALJ's explanation for Plaintiff's RFC:

> The ALJ explained her RFC finding (Tr. 16). She noted that the RFC would account for Ms. Wike's right knee status post-surgery by limiting her to light work with the ability to sit and stand as needed (Tr. 16). Ms. Wike's knee also limited her ability to climb stairs, ramps, ladders, ropes, and scaffolds; and limited her ability to stoop, crouch, kneel, and crawl (Tr. 16). The ALJ further explained that she accounted for Ms. Wike's degenerative joint disease in her right hip by limiting her to only occasional climbing, balancing, kneeling, and crawling; and her dwarfism limited her ability to lift heavy items, so she was limited to light exertional work (Tr. 16). The ALJ found that due to Ms. Wike's pain, her exposure to hazards, climbing, kneeling, balancing, and crawling was limited (Tr. 16). Finally, the ALJ noted that in establishing the RFC, she also considered Ms. Wike's hip dysplasia (Tr. 21).
>
> The ALJ explained that this RFC finding was supported by the findings of Dr. Elizabeth Hoyt (Tr. 354-362), the State agency medical consultant,[3] although the ALJ believed that evidence from subsequent to Dr. Hoyt's review indicated that Ms. Wike should have a sit/stand option and that pain would interfere daily with attending to work (Tr. 18-19). Accordingly, the ALJ added these limitations to the RFC and found that with this RFC, Ms. Wike was disabled (Tr. 21-23).

---

[3] State agency medical consultants are "highly qualified . . . experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); See Lusk v. Astrue, No. 1:11 cv-196-MR, 2013 WL 498797, at *4 (expert opinions of agency reviewing physicians may amount to substantial evidence where they represent a reasonable reading of the relevant evidence).

> The ALJ then determined that as a result of Ms. Wike's February 2013 knee surgery, she experienced medical improvement to the extent that after April 30, 2013, she had the same RFC as previously determined, but she would not have pain to the extent that it would daily interfere with attending at the workstation for possibly minutes a day or hours a day (Tr. 19, 25).

(Document No. 13, p.4).

Defendant goes on to persuasively argue that the ALJ's determination that Plaintiff experienced sufficient medical improvement to find that she was not disabled after April 30, 2013, is supported by substantial evidence. (Document No. 13, pp.5-8).

At the outset, Defendant notes that Plaintiff testified at the hearing that her most significant, limiting, and painful medical condition had been her knees. (Document No. 13, p.5) (citing Tr. 83-84). Following an initial consultation on January 22, 2013, Dr. Ole Raustol ("Raustol") noted in his report that Plaintiff's left knee was not bothering her at all and that she had no pain with motion of her hip. Dr. Raustol performed surgery – a right knee medial patellofemoral ligament reconstruction to repair the patellar instability – on February 15, 2013. Id. (citing Tr. 14, 517). (Tr. 504). Plaintiff acknowledged under examination by the ALJ at the hearing that surgical intervention to both knees had resolved that problem. (Tr. 84).

On April 30, 2013, Raustol noted that Plaintiff was doing well; her knee was not bothering her; she had good quadriceps strength; no effusion; and she was able to bear full weight with minimal limping. See (Document No. 14, p.5) (citing Tr. 20, 510). Based on an August 7, 2013, follow-up appointment, Raustol reported that Plaintiff was doing well; "has had no recurrent instability **and has no pain**." (Tr. 709); see also (Tr.15) (emphasis added). Dr. Raustol further stated that "Hannah has done very well postoperatively and can now resume all activities without restrictions." Id.; see also (Tr. 14-15).

9

The undersigned notes that Plaintiff returned to Dr. Raustol on October 25, 2013, "complaining of increasing problems with her left knee." (Tr. 701). He recorded that "[s]he would like to proceed with medial patellofemoral ligament reconstruction of the left side since she has responded well on the right side." Id. On November 14, 2013, Dr. Raustol performed a left knee medial patellofemoral ligament reconstruction on Plaintiff. (Tr. 962-963).

The undersigned observes that contrary to Plaintiff's suggestion that the ALJ was unaware of surgery on her left knee in November 2013, the record indicates that the ALJ was informed of this second knee surgery, but found that significant medical improvement had occurred by May 1, 2013. (Document 11, p.5) ("The ALJ seems to have missed this…."). As noted above, the ALJ specifically examined Plaintiff regarding her knee surgeries. (Tr. 84). Moreover, the decision reflects the ALJ's awareness of multiple knee issues/surgeries. See (Tr. 17) (citing Tr. 638-718) ("After her second surgery, she was doing well."); (Tr. 20, 26) ("claimant had undergone 2 surgeries related to her knees'"); (Tr. 21) ("primary predicate in establishing the residual functional capacity were the claimant's knees in conjunction with her nonsevere obesity."); and (Tr. 23) ("Medical improvement occurred which enabled the claimant to ambulate effectively and sustain sitting standing and walking because of the resolution of her pain and surgical procedures to her knees.").

Plaintiff saw Dr. Raustol again on March 5, 2014, regarding complaints of hip pain while working as a cashier at Cookout. (Document No. 13, p.5) (citing Tr. 68, 1123). Defendant notes that Plaintiff was not taking pain medication at the time, but Dr. Raustol gave her some Naprosyn, a non-steroidal anti-inflammatory drug, (Document No. 13, p.6) (citing Tr. 1123-24). Raustol also reported that "[on] exam, has no pain with hip motion"; that he encouraged Plaintiff to work

on strengthening quad; and that she should see him again in 2 months for reevaluation. (Tr. 1123); see also, (Tr. 17) (citing Tr. 1108-1148).

Defendant further notes that at the June 2014 hearing, Plaintiff testified she was only taking Tylenol for pain. (Document No. 13, p.6) (citing Tr. 83). Defendant argues that using "only over-the-counter analgesics is hardly consistent with a claim of disabling pain and limitations." Id. (citing Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984)).

In addition to adequately addressing Plaintiff's knee issues, the undersigned is also satisfied that the ALJ accounted for Plaintiff's hip pain. Plaintiff contends that the ALJ found that Plaintiff's right hip dysplasia was a severe impairment prior to April 2013, but not thereafter. (Document No. 11, p.6). After review of the ALJ decision, the undersigned is not persuaded that the ALJ altered his consideration of Plaintiff's right hip dysplasia as a severe impairment. Instead, the decision indicates that the ALJ was aware of Plaintiff's hip dysplasia and described his consideration of that condition. See (Tr. 17-18, 20-21). For example, the decision provides that the ALJ "considered the claimant's hip dysplasia, however, the primary predicate in establishing the residual functional capacity were the claimant's knees in conjunction with her nonsevere obesity." (Tr. 21). The ALJ ultimately determined that following her knee surgeries, Plaintiff "no longer has a severe impairment or combination of impairments that would interfere with attending the workstation on a daily basis," and that her "capacity for basic work activities has increased." (Tr. 27).

Plaintiff does not explicitly argue that the ALJ erred in his consideration of Plaintiff's activities of daily living. (Document No. 11, pp.7-8). However, to the extent Plaintiff suggests that the ALJ's consideration was improper because he did not describe "the qualifications to

perform such activities," the undersigned is not convinced that remand is appropriate. See (Tr. 24-25, 26).

In short, the undersigned finds Defendant's arguments to be well-reasoned, and that the ALJ thoroughly considered Plaintiff's allegations and medical records before reaching a conclusion, based on substantial evidence, that Plaintiff was not disabled as of May 1, 2013. (Tr. 28).

**B.      Meaningful Review**

Plaintiff's second and final argument asserts that there are "internal inconsistencies in the ALJ's decision which prevent meaningful, substantial evidence review." (Document No. 11, p.8). Plaintiff contends that it is "unclear whether the ALJ found that Ms. Wike was no longer disabled after April 30, 2013 because she had no severe impairments or because she was able to work at a reduced light RFC.

The undersigned respectfully disagrees. Although the ALJ's decision is in parts challenging to follow, presumably due to explaining a fairly long and complicated medical history in the context of a partially favorable decision, it does not frustrate meaningful review. Rather, as noted above, the analysis appears to be thorough and convincing.

The undersigned recognizes that statement #15 on page 23 appears somewhat inconsistent as to whether Plaintiff continues to have an impairment or combination of impairments; however, reading the decision as a whole, and noting in particular pages 27-28, the undersigned finds that the ALJ's conclusion is well-supported. There, the ALJ states unequivocally that Plaintiff "no longer has a severe impairment or combination of impairments *that would interfere with attending the workstation on a daily basis*." (Tr. 27) (emphasis added). Overall the ALJ's opinion is clear

that Plaintiff's knees improved after surgery and reduced her pain symptoms, but that she continues to have limitations caused by hip dysplasia, dwarfism, and obesity.

The ALJ was explicit that at least between May 1, 2013 and the date of his decision, Plaintiff could perform light work, with additional limitations as described in the decision. (Tr. 28). Moreover, the ALJ properly cited to, and relied on, VE testimony identifying jobs Plaintiff could perform. Id. It is clear to the undersigned that the ALJ found that Plaintiff was no longer disabled after April 30, 2013, because she was able to work at a reduced light RFC.

## IV. CONCLUSION

Based on the parties' arguments, the ALJ's decision, and the record, the undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will order that the Commissioner's decision be affirmed.

**IT IS, THEREFORE, ORDERED** that: Plaintiff's "Motion For Summary Judgment" (Document No. 10) be **DENIED**; the "Commissioner's Motion For Summary Judgment" (Document No. 12) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

**SO ORDERED**.

Signed: December 9, 2016

David C. Keesler
United States Magistrate Judge